No. 20-1049

_____

In the
UNITED STATES COURT OF APPEALS
for the EIGHTH CIRCUIT

_____

**JEFFERY JUST,**
**Plaintiff/Appellee,**


**v.**


**NELLIE KUYKENDALL, et al.**
**Defendants/Appellants.**

_____

Appeal from the United States District Court
Eastern District of Missouri, Eastern Division
The Honorable Nanette A. Baker, Magistrate Judge

_____

**PETITION OF APPELLANTS FOR REHEARING AND REHEARING *EN***
***BANC***

_____

JULIAN L. BUSH
CITY COUNSELOR
Robert H. Dierker 23671(MO)
dierkerr@stlouis-mo.gov
Brandon Laird
Associate City Counselors
1200 Market St.
City Hall, Rm 314
St. Louis, MO 63103
314-622-3361/FAX 622-4956

# CONTENTS

TABLE OF CONTENTS ........................................................................................ ii

PRELIMINARY STATEMENT (F.R.A.P. 35(b)) .................................................. 1

SUMMARY OF THE CASE ................................................................................. 3

ARGUMENT ....................................................................................................... 4

RELIEF SOUGHT ............................................................................................. 14

CERTIFICATE OF SERVICE ........................................................................... 16

CERTIFICATE OF COMPLIANCE .................................................................. 16

APPENDIX ........................................................................................................ 17

# TABLE OF AUTHORITIES

## Cases

| Cases | Pages |
|---|---|

*Anderson v. Creighton,* 483 U.S. 635 (1987) .........................................................6, 8

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ....................................................................8

*Beck v. Ohio*, 379 U.S. 89, 91 (1964) ......................................................................9

*Behrens v. Pelletier,* 516 U.S. 299 (1996) .........................................................5, 6, 7

*Devenpeck v. Alford,* 543 U.S. 146 (2004) ............................................................10

*District of Columbia v. Wesby,* 138 S.Ct. 577 (2018) ........................................3, 10

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982)...........................................................5, 8

*Heien v. North Carolina,* 574 U.S. 54 (2014).........................................................10

*Hunter v. Bryant,* 502 U.S. 224, 227 (1991)..........................................................8, 9

*Johnson v. Jones,* 515 U.S. 304 (1995) ..................................................................5

*Kahle v. Leonard,* 477 F.3d 544 (8th Cir. 2007) .....................................................7

*Lawyer v. City of Council Bluffs,* 361 F.3d 1099, 1106 (8th Cir. 2004)..................10

*Mitchell v. Forsyth,* 472 U.S. 511 (1985) .............................................................3, 8

*Nieves v. Bartlett,* 139 S.Ct. 1715 (2019) ...........................................................8, 14

*Ornelas v. United States,* 517 U.S. 690 (1996).........................................................9

*Plumhoff v. Rickard,* 572 U.S. 765 (2014)............................................................1, 2

*Reece v. Groose,* 60 F.3d 487 (8th Cir. 1995) ..........................................................6

*Scott v. Harris,* 550 U.S. 372 (2007) ......................................................9

*Shannon v. Koehler,* 616 F.3d 855 (8th Cir. 2010)...................................7

*S.M. v. Krigbaum,* 808 F.3d 385 (8th Cir. 2015) .....................................7

*United States v. Arvizu,* 534 U.S. 266 (2002) ........................................10

*Waters v. Madson,* 921 F.3d 725 (8th Cir. 2019) ...............................8, 14

**Constitution, Statutes, Rules**

U.S.Const. amend. I ...................................................................................8

U.S.Const. amend. IV .........................................................................8, 10

42 U.S.C. §1983 ....................................................................................4, 7

F.R.A.P. 35 ................................................................................................1

8th Cir. R. 40A .........................................................................................15

## Preliminary Statement Pursuant to F.R.A.P. 35(b)(1)

Appellants Kuykendall and Henry submit that rehearing *en banc* is necessary and proper in this case, because the summary dismissal of the appeal herein denies appellants' right to interlocutory review of a plainly erroneous denial of summary judgment on qualified immunity grounds. Summary dismissal is in direct conflict with decisions of the Supreme Court of the United States and of this Court, as set forth hereinafter, and, due to the summary nature of the order, also raises questions of exceptional, national importance in regard to summary disposition of qualified immunity appeals.

Appellants appreciate the exceptional nature of a rehearing *en banc* and of considerations militating against rehearings; nevertheless, rehearing *en banc* is appellants' only avenue to seek relief from summary dismissal of their appeal--unless the motion panel reconsiders its dismissal, and, of course, appellants concomitantly seek panel rehearing in the hope that the panel *will* reconsider its improvident ruling.

The motion panel acted on plaintiff-appellee's motion to dismiss for lack of jurisdiction, supported by nothing but the district court's memorandum and order. In his motion, appellee relied almost entirely on *Plumhoff v. Rickard,* 572 U.S. 765 (2014). It is ironic indeed that appellee should rely on *Plumhoff* to provoke a summary dismissal, for that is exactly how the Sixth Circuit reacted in *Plumhoff,*

necessitating rehearing and decision by a merits panel, and resulting in reversal by the Supreme Court on the immunity issue—in the process holding that denial of summary judgment had been appealable all along. 572 U.S. at 770-71. That is what should happen in this case.

Had the motion panel permitted this appeal to proceed, appellants would have shown from the record, including appellee's own response to the summary judgment motion, that their defense of qualified immunity does not depend on disputed facts, and that the district court plainly misapplied the law in denying summary judgment. Simply put, the district court gave up attempting to apply qualified immunity, not because the plaintiff denied certain facts, but because appellants did not specifically identify what offense they believed the plaintiff committed that justified his arrest or detention. This analysis is in direct conflict with a multitude of Supreme Court precedents, and also in direct conflict with numerous, binding precedents of this Court, discussed below, all holding that the question of probable cause or articulable suspicion is decided as a matter of law based on an objective analysis of the facts and circumstances, and not on an officer's subjective belief as to the reason for the seizure. If the facts and circumstances show *any* objective basis for a seizure, it is valid. At a minimum, it is arguably valid, and that is good enough for qualified immunity.

That being so, the summary dismissal of the appeal in this case is inexplicable. It sets at naught the Supreme Court's teachings from *Mitchell v. Forsyth,* 472 U.S. 511 (1985), through *District of Columbia v. Wesby,* 138 S.Ct. 577 (2018).

## SUMMARY OF THE CASE[1]

Appellants Kuykendall and Henry were (and are) police officers employed by the City of St. Louis. On July 7, 2017, they responded to appellee Just's call for police due to an apparent tampering with Just's truck near a gas station. Upon arrival, the officers interviewed Just, who described finding a third person in his truck when he returned to it after retrieving a gas can. While the officers were engaged with Just, the accused tamperer returned to the scene and joined the conversation with the officers. Appendix A001-A002, A-029-A030.

The accused tamperer explained that he had in fact entered Just's truck, thinking it belonged to his brother. However, when he talked to the officers, the tamperer accused Just of chasing him and threatening him with a knife. Appendix A-009, A-030. The officers at first determined that no action should be taken.

---

[1] As noted, the record before the panel consisted solely of Magistrate Judge Baker's order. Appellants will refer to materials in the record before the district court that would have been included in an appendix had the appeal proceeded. For the convenience of the Court, petitioners have included the district court's order [ECF 71] and the plaintiff's reply to the defendants' statement of uncontroverted material fact ("SUMF") [ECF 65] in an appendix to this petition.

Just, however, demanded at least the filing of a police report. When the officers demurred, Just became upset, took Officer Henry's card and proceeded to write down Officer Kuykendall's name. Appendix A-011-A-012. At that point, Officer Kuykendall announced that Just was under arrest. He was handcuffed and detained. *Id.,* A-021-A-023. A search of Just and the area around his truck revealed no knife. *Id.* However, Officer Henry believed that Just had committed the offense of flourishing a weapon on the basis of the tamperer's accusation, because the tamperer voluntarily returned to the scene. *Id.,* A-014. Still, the accused tamperer was recalled to the scene and also detained. After a sergeant arrived and discussed the matter, Just was released. No charges were ever filed. See *id.,* A-015-A-016, A-030-A032.

## ARGUMENT

**I.     The summary dismissal of this appeal cannot be reconciled with binding Supreme Court and Circuit precedent requiring appellate courts to determine, on the basis of the record, whether a district court correctly denied qualified immunity to officers in an action under 42 U.S.C. §1983.**

The summary dismissal order in this case leaves appellants Officers Kuykendall and Henry without any meaningful review of the district court's order denying them qualified immunity to Just's suit, and without any explanation for the refusal to entertain the appeal. The officers necessarily assume that the motion

panel accepted Just's argument in his motion to dismiss the appeal, that immunity in this case turns on disputed issues of fact. The problem, of course, is that appellants have been deprived of any opportunity to present the full summary judgment record to demonstrate that Just and district court are wrong. In summarily dismissing the appeal, therefore, the panel compounded the district court's error. The summary dismissal is at war with Supreme Court and Eighth Circuit precedent and is fundamentally unfair to appellants.

The Supreme Court authoritatively rejected the sort of summary disposition granted by the panel in *Behrens v. Pelletier,* 516 U.S. 299 (1996). The Supreme Court held that an appeal from denial of summary judgment on qualified immunity is not foreclosed by the simple assertion that the denial rests on the ground that "material issues of fact remain." 516 U.S. 312-13. In so doing, the Supreme Court explained the holding in *Johnson v. Jones,* 515 U.S. 304 (1995):

> . . . *Johnson* reaffirmed that summary judgment determinations are appealable when they resolve a dispute concerning an "abstract issue of law" relating to qualified immunity. . .-- typically, the issue whether the federal right allegedly infringed was 'clearly established'."

The Supreme Court then went on to hold:

> Here the District Court's denial of petitioner's summary judgment motion necessarily determined that certain conduct attributed to petitioner (which was controverted) constituted a violation of clearly established law. *Johnson* permits petitioner to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the *Harlow* standard of "objective legal reasonableness."

Similarly, in *Anderson v. Creighton,* 483 U.S. 635 (1987), the Supreme Court rejected this Circuit's position that qualified immunity could not be established in light of disputed facts and circumstances surrounding an allegedly illegal search. The Supreme Court made it plain that, in the context of qualified immunity, the constitutional right at issue is not to be defined at a high level of generality, and, further, that qualified immunity is not defeated by factual disputes so long as the court can conclude as a matter of law that an officer's actions were reasonable in light of the law at the time.

In the case at bar, the district court did exactly what this Court did in *Anderson*: it defined the right at stake at a high level of generality, as "the right not to be arrested without probable cause," Appendix A-033, and it proceeded to deny qualified immunity on the basis of factual disputes related to evidentiary sufficiency of the plaintiff's claim. However, all of the conduct that the district court concluded could expose the officers to liability in reality meets the standard of objective legal reasonableness. In depriving appellant officers of their ability to show that on appeal, the panel's summary dismissal was in conflict with the Supreme Court's decision in *Behrens*.

The summary dismissal order here is also at war with Eighth Circuit precedent. In *Reece v. Groose,* 60 F.3d 487 (8th Cir. 1995), this Court applied *Anderson* in holding that an interlocutory appeal on qualified immunity was within

6

this Court's jurisdiction: "If . . . the party asserting qualified immunity asks us to examine the facts as they were known to the government official in order to determine whether clearly established law would be violated by his actions, *Anderson* requires that we accept jurisdiction and address their arguments." 60 F.3d at 489. Similarly, in *Shannon v. Koehler,* 616 F.3d 855 (8th Cir. 2010), this Court applied *Behrens v. Pelletier* to embrace jurisdiction of an interlocutory appeal on qualified immunity: "Here, there is no serious question that we have jurisdiction to decide whether, accepting Shannon's version of the facts, Officer Koehler is entitled to qualified immunity as a matter of law." 616 F.3d at 861. See also *S.M. v. Krigbaum,* 808 F.3d 385 (8th Cir. 2015); *Kahle v. Leonard,* 477 F.3d 544 (8th Cir. 2007).

Appellants respectfully submit that summary dismissal of their appeal was improvident at best. As demonstrated above, it was inconsistent with binding precedent; as demonstrated below, appellants have a meritorious claim that, even on Just's version of the facts, they are entitled to qualified immunity. At the very least, appellants should be afforded their right to interlocutory appeal and plenary review of the district court's order.

**II.     The record below shows conclusively that appellant officers are entitled to qualified immunity against the appellee Just's §1983 claim of wrongful arrest, but the summary dismissal of the appeal herein both**

**deprives appellants of their defense of qualified immunity and concomitantly**

**obviates their right to interlocutory review of the district court's order**

**denying qualified immunity--on the basis of a motion to dismiss that relied**

**solely on the district court's incorrect appraisal of the record.**

The Supreme Court long ago established that qualified immunity shields

police officers from suits for damages for Fourth Amendment violations if a

reasonable officer could have believed an arrest or detention to be lawful, in light

of clearly established law and the information the arresting officer possessed at the

time. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Even law enforcement

officials who "reasonably but mistakenly conclude that probable cause is present"

are entitled to immunity. Moreover, because "the entitlement is an immunity from

suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511

(1985), the Supreme Court has repeatedly stressed the importance of resolving

immunity questions at the earliest possible stage in litigation. See *Hunter v. Bryant,*

502 U.S. 224, 227 (1991), citing, *inter alia, Harlow*, 457 U.S. at 818; see also

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009). The Supreme Court has also explained that

a First Amendment "retaliatory arrest" claim usually fails without a Fourth

Amendment violation. *Nieves v. Bartlett,* 139 S.Ct. 1715 (2019); see also *Waters*

*v. Madson,* 921 F.3d 725 (8th Cir. 2019).

The decision of the motion panel in this case ignores the import of these

decisions. The panel apparently accepted the district court's confused and mistaken rationale for denying summary judgment. The question of whether a reasonable officer could have believed he had probable cause or reasonable suspicion in detaining an individual under the totality of the circumstances is *not* a question for the trier of fact. *Scott v. Harris,* 550 U.S. 372 (2007); *Ornelas v. United States,* 517 U.S. 690 (1996). The district court's reasoning wrongly would place the question of immunity in the hands of the jury, but immunity ordinarily should be decided by the court. Further, the inquiry is whether the officers acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed years after the fact. *Hunter v. Bryant,* 502 U.S. 227-28.

Appellants are immune if a reasonable officer could have believed that probable cause or reasonable suspicion existed to detain Just, even if the belief turned out to be mistaken. Probable cause existed, of course, if "at the moment the arrest was made . . . the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that Just had violated the law. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Similarly, reasonable suspicion existed if, at the time, the officers reasonably believed that there was articulable suspicion of criminal activity sufficient to warrant further investigation of Just, given the totality of the

circumstances.  E.g., *United States v. Arvizu,* 534 U.S. 266 (2002).

Finally, and most importantly, the probable cause or reasonable suspicion
analysis is not controlled by the subjective belief of the officer concerning the
reason for the arrest.  If the facts and circumstances, objectively considered, would
support a detention for an offense other than that cited by the officer, the detention
is valid, even if the offense the officer thought had been committed is not related to
the actual offense for which probable cause or reasonable suspicion exists.  *District
of Columbia v. Wesby,* 138 S.Ct. 577 (2018); *Devenpeck v. Alford,* 543 U.S. 146
(2004); *Lawyer v. City of Council Bluffs,* 361 F.3d 1099, 1106 (8th Cir. 2004).
Indeed, even if an arrest is contrary to state law, the Fourth Amendment is not
violated if the officer's conduct was objectively reasonable under the
circumstances.  *Heien v. North Carolina,* 574 U.S. 54 (2014).

The most superficial examination of the district court's order reveals its
glaring faults.  The district court opined (Appendix A-033):

> The following facts are in dispute.  Just was either not arrested, arrested for
> assault, or arrested for flourishing a weapon on another person.  Assuming
> Just was arrested, the Defendants and Just disagree as to the timing of Just's
> arrest.  Just believed himself to be arrested upon being placed in handcuffs
> and told he was under arrest for assault.  Henry testified Just was placed
> under arrest when he was put in handcuffs for "use of a weapon, flourishing
> a person."  Kuykendall testified that Just was only detained for further
> investigation, not under arrest, when she and Henry placed Just in handcuffs.
> Kuykendall further testified that Just was never "placed in custody."
> Kuykendall testified Just was detained for "UUW flourishing."  Just states
> that he was only arrested after expressing his disagreement with the officers'
> failure to arrest Doe and writing down Kuykendall's name on the business

card.

From these "factual disputes," the district court concluded (Appendix A-036-A-037, citations omitted, emphasis added):

> If the Court accepted that Just was arrested for assault in order to determine whether arguable probable cause for the arrest existed, *this Court has no facts as to which assault statute the arrest was based* [sic]. Missouri's assault statutes range from a class C misdemeanor to a class A felony, each with different factors. The determination whether an officer has made an "objectively reasonable" mistake as to arguable probable cause is difficult, if not impossible, when the arresting officers cannot agree whether Just was arrested, the reason for the arrest, the timing, nor provide the state statute upon which Just's assumed arrest was based. It is the moving party's burden, to show that no genuine issue of material fact exists and that the Defendants are entitled to judgment as a matter of law. . . . The Court "must view the evidence in the light most favorable to the opposing party" and draw all "reasonable inferences" in favor of the opposing party. . . . The Defendants have not met their burden. There are genuine issues of material fact which are critical to this case. These issues of material fact include, but are not limited to, whether Just was arrested and if so, what he was arrested for, and if there is any factual support for probable cause regarding the arrest. These material facts remain in genuine dispute and go to the very essence of this case. "[D]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." . . . ("[W]here the facts are disputed or where they are subject to different inferences, the question of probable cause is for the jury and summary judgment is inappropriate.").

The district court was palpably wrong, conflating the standard for granting summary judgment on a claim with the standard for granting summary judgment on qualified immunity, and wholly ignoring the undisputed fact that the officers were told that Just had flourished a knife. In summarily dismissing this appeal, the motion panel failed to appreciate the nature and magnitude of the district court's

errors.  Contrary to the district court, the following undisputed facts of record[2] control the immunity analysis here:

1.      Officers Kuykendall and Henry responded to Just's report of tampering with his truck.  When the officers arrived, Just described an incident in which an unknown person was found in his truck.  Appendix A-002, A-005, A-030.

2.      While the officers were interviewing and investigating Just's report, the person who engaged in the apparent tampering came to the scene.  Appendix A-007, ¶9.  That person verified some of Just's report, but also accused Just of chasing him and threatening him with a knife.  *Id..,* A-009 ¶13, A-13, ¶20, A-18.  (This accusation was apparently echoed by another person.  See *id.,* A-030.)

3.      The officers allowed the apparent tamperer to leave.  Appendix A-010, ¶14

4.      Just asked that the police prepare a report of the incident, but they responded that they would not.  Appendix A-012.

5.      Just became upset that no report would be written.  Appendix A-012, ¶17.

---

[2] Just's response to the defendants' SUMF is a classic exercise in pettifogging. For example, he quibbles about the gas station's location at an intersection. Appendix A-01, ¶1. Leaving that aside, however, the response demonstrates that the foregoing facts are indeed undisputed.

6.	The officers detained Just for assault or flourishing a weapon, with Officer Kuykendall announcing that he was under arrest.  Appendix A-012-013, 019.

7.	The officers' search at the time revealed no knife on Just's person or on the ground, but the officers did not examine the truck.  Appendix A-015, ¶24-25.

9.	The behavior of Just's accuser led Officer Henry to believe him to be credible, since persons accused of tampering with vehicles seldom voluntarily come back to the scene and submit to an interview.  Appendix A-014.

10.	The officers directed the apparent tamperer to come back to the gas station, and they then detained him too.  Appendix A-014-015, ¶¶22-23.

11.	After further review with a sergeant, both Just and the tamperer were released without charges.  Appendix A-016-A-017, A-024.

A review of the full summary judgment record will confirm that the totality of the undisputed circumstances shows that the officers were confronted with competing narratives concerning what happened at or near the gas station lot on the night of July 7, 2017.  Just reported a tampering.  The alleged tamperer in turn alleged that Just had threatened him with a knife—an accusation also made by a third person.  After Just became angry at the officers' handling of the situation, the officers detained both Just and the alleged tamperer for a short time.

Just attributes his detention to appellants' annoyance with his behavior, including his act of writing down Officer Kuykendall's name. However, the officers' annoyance is neither here nor there. *Nieves v. Bartlett,* 139 S.Ct. 1715 (2019). The question is whether, under all the circumstances, the officers at least arguably had probable cause or reasonable suspicion to detain Just. They did. Even assuming that Just was arrested (and his handcuffing and temporary hold at the scene do not necessarily amount to an arrest—see, e.g., *Waters v. Madson,* 921 F.3d 725 (8th Cir. 2019)), the district court was nonetheless wrong in its denial of qualified immunity.

Even if the district court's result is arguably defensible, the qualified immunity issue merits plenary consideration by this Court. If summary dismissal is to be the order of the day on qualified immunity appeals, entirely on the *ipse dixit* of the district court, the right interlocutory appeal on qualified immunity will be hollow indeed.

## RELIEF SOUGHT

Appellants Kuykendall and Henry have no alternative but to seek rehearing. Because summary dismissal of a qualified immunity appeal sets a dangerous precedent for defendants seeking review of district court orders denying immunity, appellants respectfully request that this Court set aside its understandable reluctance to grant rehearings *en banc,* grant rehearing in this cause, and set the

case for argument before the Court *en banc*.  At a minimum, hearing *en banc* is warranted in order to examine the standards to be followed in this Circuit in summarily dismissing qualified immunity appeals.  Alternatively, appellants request that the panel vacate its summary dismissal order and docket the appeal herein for full briefing and argument.  8th Cir. Rule 40(A)(b).

Respectfully submitted,

JULIAN L. BUSH
CITY COUNSELOR
 /s/ Robert H. Dierker
Robert H. Dierker 23671(MO)
Brandon Laird 65564(MO)
Associate City Counselors
dierkerr@stlouis-mo.gov
1200 Market St.
City Hall, Rm 314
St. Louis, MO 63103
314-622-3361
Fax 314-622-4956

ATTORNEYS FOR APPELLANTS

## CERTIFICATE OF SERVICE

I hereby certify that on this 5 day of March 2020, a copy of the foregoing petition for rehearing *en banc* was served on counsel of record for all parties by means of the Court's electronic filing system.

 */s/Robert H. Dierker*
Associate City Counselor

15

**CERTIFICATION OF COMPLIANCE**

<u>CERTIFICATION OF TYPE AND VOLUME LIMITATION</u>

I hereby certify that the text of the foregoing document contains 3553 words, excluding tables and certificates, of proportionally spaced text as determined by the automated word count of the Microsoft Word 2010 word processing system and has 14 point print size.

                *Robert H. Dierker*
                Associate City Counselor

# APPENDIX

# TABLE OF CONTENTS

| ECF No. | Description | Page |
|---------|-------------|------|
| 65 | Defendants' Statement of Uncontroverted Material Facts | A-001 |
| 71 | Memorandum and Order | A-027 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFERY JUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-424-NAB |
| | ) | |
| CITY OF ST. LOUIS, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

Defendants, St. Louis Police Department Officers Nellie Kuykendall and Eric Henry file statements of uncontroverted facts in support of their motion for summary judgment. All facts asserted herein are set forth for the purposes of this motion only

1. On July 17, 2017, Mr. Just's truck had run out of gas near a Motomart that sits at the intersection of Dunn Road and Riverside Drive, just north of I-270. (Exhibit A, Deposition of Jeffery Just, 11:9-12:22).

Response: Plaintiff denies the allegation of material fact in Paragraph 1 that the incident took place "On July 17, 2017..." and that Motomart "sits at the intersection of Dunn Road and Riverside Drive, just north of I-270."

Plaintiff admits the allegation of material fact in Paragraph 1 that "Mr. Just's truck had run out of gas on July 7, 2017 near a Motomart that sits at the intersection of Dunn Road." (*See* Defendants' Statement of Facts No. 1).

*Reply: Defendant concedes that the event occurred on July 7, 2017.*

1

2.     Mr. Just went to the gas station to retrieve a gas can with gas, and upon his

return, found an individual in his truck. (Ex. A, 14:2-15:1).

Response:    Plaintiff denies the allegation of material fact in Paragraph 2 that "Mr.

Just went to the gas station to retrieve a gas can with gas, and upon his return,

found an individual in his truck."1 Plaintiff admits that he went inside the

MotoMart to buy a gas can and the gal at the counter lent Plaintiff one. Plaintiff

then paid for gas, filled the can and when he got to his truck, there was a guy in it.

(*See* Defendants' Statement of Facts No. 2).

*Reply: Plaintiff's response does not controvert the fact asserted in paragraph 2 that*

*Mr. Just went to the gas station, and upon his return found an individual in his*

*truck. So the fact in paragraph 2 is undisputed.*

3.     The person Mr. Just found in his truck, Donnell Franklin,[1] explained to Mr.

Just that he believed the truck belonged to his brother. (Ex. A, 15:21).

Response:    Plaintiff objects to the footnote 1 of Paragraph No. 3, which states:

"Defendants's believe, after their investigation into this case, that the
identity of the individual Mr. Just found in his truck is Donnell Franklin.
Defendants are not asserting Mr. Franklin's name as an uncontroverted
fact, rather, they will confer the name Donnell Franklin to that individual
for this motion solely for ease of reading."

"The person Mr. Just found in his truck, Donnell Franklin (Defendants's believe,

after their investigation into this case, that the identity of the individual Mr. Just

---

[1] Defendants's believe, after their investigation into this case, that the identity of
the individual Mr. Just found in his truck is Donnell Franklin. Defendants are not
asserting Mr. Franklin's name as an uncontroverted fact, rather, they will confer
the name Donnell Franklin to that individual for this motion solely for ease of
reading.

2

found in his truck is Donnell Franklin. Defendants are not asserting Mr. Franklin's name as an uncontroverted fact, rather, they will confer the name Donnell Franklin to that individual for this motion solely for ease of reading)2, explained to Mr. Just that he believed the truck belonged to his brother."

Plaintiff further objects to and denies the allegation of material fact in Paragraph 3 that "The person Mr. Just found in his truck, Donnell Franklin, explained to Mr. Just that he believed the truck belonged to his brother" on the basis that Defendants cite to "Ex. A, 15:21", which cites to the word, "police." Defendants fail to properly cite to a Question and Answer of deposition testimony of Plaintiff.

Lastly, Plaintiff denies the allegation of material fact in Paragraph 3 on the basis that the guy told Plaintiff that the truck was his; he said it was his brother's truck once. (*See* Defs. Ex. A, 15:7-16:1; Defendants' Statement of Facts No. 3).

*Reply: Plaintiff's response does not contradict the fact asserted in paragraph 3, that the individual Mr. Just found in his truck told Mr. Just that he believed the truck belonged to his brother. Defendant will concede that Mr. Franklin did initially tell Mr. Just that he believed the truck belonged to him, before saying it belonged to his brother. (Ex. A, 15:15-21). In any event, the fact is not disputed in any material way, so the fact should be deemed admitted.*

3

4.       Once Mr. Franklin exited the truck, Mr. Just called 9-1-1 to report the

incident (Ex. A, 15:19-21).

Response:    Plaintiff objects to and denies this allegation of material fact in

Paragraph 4 that "Once Mr. Franklin3 exited the truck, Mr. Just called 9-1-1 to

report the incident" on the basis that Defendants fail to properly cite to a Question

and Answer of deposition testimony of Plaintiff. To be exact, in support of this

allegation of fact, Defendants cite: "Ex. A, 15:19-21." This cited testimony is:

"brother's truck. Finally, he got out of the truck, I was able to get to my phone in

the truck and I called the police." This cited testimony does not support the alleged

fact, "Mr. Just called 9-1-1 to report the incident." The testimony is, "I called the

police." He didn't say he called 9-1-1 to report the incident." (*See* Defendants'

Statement of Facts No. 4).

*Reply:Defendants will concede that Mr. Just called the police. This is not a material*

*dispute, so the fact in paragraph 4 should be deemed admitted.*

5.       After he called the police, Mr. Just saw Mr. Franklin walk behind the

Motomart and out of sight. (Ex. A, 21:1-11)

Response: Plaintiff admits in part and denies in part the allegation of material fact

in Paragraph 5 that "Mr. Just saw Mr. Franklin walk behind the Motomart and

out of sight." Plaintiff admits that he saw the guy walk in the direction of the

MotoMart and out of sight. Plaintiff denies that he saw the guy walk behind the

MotoMart. This is not supported by Plaintiff's testimony cited by the Defendants.

(*See* Defendants' Statement of Facts No. 5).

*Reply: Defendant will concede that Mr. Just did not testify to seeing that Mr. Franklin walked behind the Motomart, only out of sight. In any event, the fact in paragraph 5, that Mr. Just saw Mr. Franklin walk out of sight is not controverted and should be deemed admitted.*

6.      Mr. Just had a number of tools in the front seat of his truck, but did not notice that any of them were stolen. (Ex. A, 16:12-17, 35:8-20).

Response:    Plaintiff objects to and denies this allegation of material fact in Paragraph 6 that, "Mr. Just had a number of tools in the front seat of his truck, but did not notice that any of them were stolen." This allegation of fact misrepresents the testimony of Plaintiff. Defendants cited, "Ex. A, 16:12-17, 35:8-20", which sets forth as follows:

"A. Well, he had the console up and he's steadily going through my console. I got my tools in there that I use for work sometimes and I had my phone bill sitting there. My cell phone was in the truck on the charger. So, he's just got the console up and he's just rifling through my console as I'm talking to him. It's like he..."
...
A. I actually hit the power lock and then checked the handle 'cause 1 got all my tools sitting right there on my seat.
Q. Okay.

A. A bag with a bunch of tools in it.
Q. Did you notice at any time whether any of the tools had been stolen?
A. Man 1 got so many of them in there I'd have to go through them one by one and make sure everything's there, you know.
Q. Okay.
A. From what I glanced over, I didn't notice any of the tools were stolen."

Defendants stopped the citation at the point where plaintiff specifically explained further relevant information pertinent to this allegation of material fact as alleged in Paragraph 6:

A - 005

"Q. Okay. And you never did an inventory like that on that tool bag?
A. Like I say man it would be impossible. It's like looking through a big bag of tools and trying to figure out what's there. You don't know it's not there until you go to use it, you know."

(*See* Defs. Ex. A, 35:21-36:1) (*See* Defendants' Statement of Facts No. 6).

*Reply:Plaintiff's response does not controvert the fact asserted that he had a number of tools in the front seat of his truck and the he did not notice any of them stolen. So the fact should be deemed admitted.*

7.      Officers Henry and Kuykendall responded to the call approximately an hour later. (Ex. A, 20:11-14).

Response:   Plaintiff denies the allegation of material fact in Paragraph 7 that, "Officers Henry and Kuykendall responded to the call approximately an hour later. Defendants cite to Plaintiff's testimony at Ex. A, 20:11-14, which sets forth, "Q. Do you recall how long it was between your 911 call and when the police responded? A. I'm not sure, sir. It seemed like half hour, 45 minutes. I couldn't really tell you." (*See* Defendants' Statement of Facts No. 7).

*Reply:Defendants will concede that the officers arrived 30-45 minutes after Mr. Just called.*

8.      After the officers arrived, Mr. Just told the officers what he believed had happened. (Ex. A, 25:9-26:8).

Response:   Plaintiff objects to the allegation of material fact in Paragraph 8 on the basis that it is overly broad and vague: "After the officers arrived, Mr. Just told the officers what he believed had happened." Defendants cite to Ex. A, 25:9-26:8, which contains a number of specific statements of Plaintiff made to the officers.

6

(*See* Defendants' Statement of Facts No. 8).

*Reply: Plaintiff's response does not controvert the asserted fact that the Mr. Just told the officers what he believed happened after the officers arrived. So, the fact in paragraph 8 should be deemed admitted.*

9.  Then, Mr. Franklin, the person Mr. Just had seen in his truck, returned to the Motomart. (Ex. A, 26:20-22).

Response:   Plaintiff denies as stated the allegation of material fact in Paragraph 9 that, "Then, Mr. Franklin, the person Mr. Just had seen in his truck returned to at the Motomart." Defendants cite to Ex. A, 26:20-22, which Plaintiff stated, "The gentleman showed up that was in my truck and they talked to him for a while." (*See* Defendants' Statement of Facts No. 9).

*Reply: The person that Mr. Just identifies is the person that Defendants are called Mr. Franklin for the purpose of summary judgment alone. The fact asserted is that the person who returned to the Motomart was the same person that Mr. Just previously found in his truck. Plaintiff's response does not controvert that fact. So, the fact asserted in paragraph 9 should be deemed admitted.*

10.  Mr. Franklin told the officers that his brother's truck had broken down and that he believed the truck in question belonged to his brother. (Ex. A, 30:2-12).

Response:   Plaintiff denies as stated the allegation of material fact in Paragraph 10 that, "Mr. Franklin told the officers that his brother's truck had broken down and that he believed the truck in question belonged to his brother" and Plaintiff

7

heard the guy state, "his brother's truck broke down on Hall Street and he thought

that that was his brother's truck." (*See* Defendants' Statement of Facts No. 10).

*Reply: Plaintiff's response does not materially dispute the fact asserted in*

*paragraph 10, that Mr. Franklin told the officers that his brother's truck broke*

*down and that he believed the truck in question belonged to his brother. So, the fact*

*asserted in paragraph 10 should be deemed admitted.*

11.    Mr. Franklin stated that he realized it was not his brother's truck when the
        key would not turn the ignition. (Ex. A, 31:22-32:32)[2].

Response:    Plaintiff denies as stated the allegation of material fact in Paragraph

11 that, "Mr. Franklin stated that he realized it was not his brother's truck when

the key would not turn the ignition." Defendants do not accurately cite to

Plaintiff's testimony. Plaintiff stated that the guy said, "Yeah, I realized it wasn't

my brother's truck when the key wouldn't fit in the ignition." (*See* Defendants'

Statement of Facts No. 11).

*Reply: Defendant will concede Plaintiff's testimony is that the key would not fit*

*rather than turn the ignition. Plaintiff's response does not materially dispute the*

*fact asserted that Mr. Franklin learned it was not his brother's truck upon trying*

*the key in the ignition. So the fact asserted in paragraph 11 should be deemed*

*admitted.*

12.    The officers then called the impound lot, and confirmed that Mr. Franklin's
        brother's truck had been impounded. (Ex. A, 33:1-4).

---

[2] There is a typographical error in the citation to paragraph 11. It should read 31:22-32:22)

A - 008

Response:      Plaintiff denies the allegation of material fact in Paragraph 12 that,

"The officers then called the impound lot, and confirmed that Mr. Franklin's

brother's truck had been impounded." In support of this allegation of material fact,

Defendants cite to Ex. A, 33:1-4, which sets forth, "would have been? A. I think

they said it was in impound. Q. The officers said it was in impound? A. Yes, sir."

Nowhere in the matter cited does it state that the officers called the impound lot

and confirmed the guys brother's truck had been impounded. This matter cited

only establishes that the officers said the guys brother's truck had been

impounded. (*See* Defendants' Statement of Facts No. 12).

*Reply:       Plaintiff's response does not materially dispute the fact asserted in*

*paragraph 12, that the officers confirmed that Mr. Franklin's brother's truck had*

*been impounded.[3] So the fact asserted in paragraph 12 should be deemed*

*admitted.*

13.      Mr. Franklin then told the officers that Mr. Just had chased him around and
        threatened him with a knife. (Ex. A, 33:5-18).

Response:      Plaintiff denies as stated the allegation of material fact in Paragraph

13 that, "Mr. Franklin then told the officers that Mr. Just had chased him around

and threatened him with a knife." Defendants cite to Ex. A, 33:5-18. Plaintiff did

not testify to a Mr. Franklin but to the guy that was in his truck. (*See* Defendants'

Statement of Facts No. 13).

*Reply:Mr. Franklin is being used by the Defendants as the name of the person who*

---

[3] The reference to the phone call is found in Ex. A, 32:21-25, which was provided by
Defendants as part of Exhibit A. (Doc. 56-2)

*was previously in Mr. Just's truck. The Plaintiff's response does not dispute the fact asserted in paragraph 13, that the individual Mr. Just found in his truck made an allegation to police officers that Mr. Just had threatened him with a knife. So the fact asserted in paragraph 13 should be deemed admitted.*

14.   At some point after that, the officers told Mr. Franklin to go home. (Ex. A, 37:11-17).

**Response:**   Plaintiff admits the allegation of material fact in Paragraph 14 that, "At some point after that, the officers told Mr. Franklin to go home." (*See* Defendants' Statement of Facts No. 14).

15.   Mr. Just questioned the officer's decision to let Mr. Franklin leave, and Officers Kuykendall and Henry told Mr. Just that they could not arrest Mr. Franklin because he had made a mistake. (Ex. A, 37:20-25).

**Response:**   Plaintiff admits the allegation of material fact in Paragraph 15 that, "Mr. Just questioned the officer's decision to let Mr. Franklin leave, and was told by Officers Kuykendall and Henry told Mr. Just that they could not really arrest Mr. Franklin because he had made a mistake." (*See* Defendants' Statement of Facts No. 15).

16.   Officer Henry provided Mr. Just with a business card on which Mr. Just began to write Officer Kuykendall's name. (Ex. A, 38:23-39:2).

**Response:**   Plaintiff denies the allegation of material fact in Paragraph 16 that, "Officer Henry provided Mr. Just with a business card on which Mr. Just began to write Officer Kuykendall's name." Defendants cite to Ex. A, 38:23-39:2, which sets

10

A - 010

forth:

"Q. Then what happened?

A. I asked for a report or something and they said, "Well, we really can't make a report. There's nothing to report." I said, "Well, something." And they said "Well, we're going to give you a business card."

Defendants misrepresent the context as Plaintiff asked for a report and in response was told the officers couldn't really make a report but gave him a business card instead. Further, there is nothing in the cited material that supports the alleged fact that, "Mr. Just began to write Officer Kuykendall's name." (*See* Defendants' Statement of Facts No. 16).

*Reply:There is nothing in Plaintiff's response that disputes the actual facts asserted, that Officer Henry provided a Mr. Just with a business card and Mr. Just began to write officer Kuykendall's name on it. Mr. Just so testified to writing officer Kuykendall's name on Ex. A, 40:4-10, which was attached as exhibit A to the motion. (Doc. 56-2). Because this fact is not materially disputed, it should be deemed admitted.*

17.     Mr. Just wanted the officer's names because he was upset that they had not arrested Mr. Franklin. (Ex. A, 39:15-23).

Response:     Plaintiff denies the allegation of material fact in Paragraph 17 that, "Mr. Just wanted the officer's names because he was upset that they had not arrested Mr. Franklin." Defendants cite to Ex. A, 39:15-23, which sets forth:

"A. Eric Henry gave me a business card and I looked at the card and it had his

11

name on it and it didn't have Officer Kuykendall.

Q. Kuykendall?

A. Kuykendall. It didn't have her name on it, so, you know I wanted her name on it because I've got to talk to somebody about this. My property is damaged and this guy admit that he damaged it and he's walking away and l don't have a report or anything."

The testimony supports that Plaintiff was not upset that the guy was not arrested, he was upset that there was not going to be a report that contained the guy's name. (*See* Defendants' Statement of Facts No. 17).

*Reply: Defendants will amend SOF ¶ 17 to state that Mr. Just was upset that a report was not going to be written.*

18.    At this time, while Mr. Just was writing Officer Kuykendall's name, Officer
       Kuykendall placed Mr. Just under arrest. (Ex. A, 40:1-22).

Response:    Plaintiff admits the allegation of material fact in Paragraph 18 that, "At this time, while Mr. Just was writing Officer Kuykendall's name, Officer Kuykendall placed Mr. Just under arrest." (*See* Defendants' Statement of Facts No. 18).

19.    Mr. Just was arrested for assault, or flourishing a weapon on another person.
       (Ex. A, 45:21-46:3, Exhibit B, Deposition Excerpts of Kuykendall Deposition,
       44:2-13; Exhibit C, Excerpts of Henry Deposition, 24:12-16; 27:4-9, 41:6-25.).

Response:    Plaintiff denies the allegation of material fact in Paragraph 19 that, "Mr. Just was arrested for assault, or flourishing a weapon on another person."

Officer Kuykendall testified that Plaintiff was never under arrest, never in our

A - 012

custody and he was just detained for an investigation. (*See* Defs. Ex. B, TR. 43:10-44:1) (*See* Defendants' Statement of Facts No. 19).

*Reply: Plaintiff is correct that Officer Kuykendall testified that Plaintiff was never under arrest. Defendants' argument is therefore designed to interpret the facts in the lights most favorable to the Plaintiff, that he was arrested, which requires probable cause. If Plaintiff is indeed disputing this fact, then the Court should only view this as a detainment requiring only reasonable suspicion. See e.g. Illinois v. Wardlow, 528 U.S. 119, 123 (2000) citing Terry v. Ohio, 392 U.S. 1, 20 (1968).*

20.    At this point, Officers Henry and Kuykendall believed that a crime had been committed by Mr. Just. (Ex. B, 31:24:-32:5; 44:2-4; Ex. C, 27:4-9).

Response:    Plaintiff denies the allegation of material fact in Paragraph 20 that, "At this point, Officers Henry and Kuykendall believed that a crime had possibly been committed by Mr. Just."

This contradicts the facts that Plaintiff was searched for a weapon, a knife, by the officers and no weapon was found. This also contradicts the source of the allegation and the credibility of the guy who made an allegation who was caught inside of Plaintiff's vehicle, even though it turned out to be the wrong vehicle. (*See* Defs. Ex. C, TR. 22:11-12; 25:1-11) (*See* Defendants' Statement of Facts No. 20).

*Reply: Plaintiff's response does not contradict the fact that both officers testified that they believed Mr. Just had possibly committed a crime. So, the fact asserted in paragraph 20 should be deemed admitted.*

21.     Officer Henry believed Mr. Franklin because in his experience, it is unusual

        for a person who was chased away from breaking into a vehicle to return to

        the scene. (Ex. C, 42:24-43:15)

Response:     Plaintiff denies the allegation of material fact in Paragraph 21 that,

"Officer Henry believed Mr. Franklin because in his experience, it is unusual for a

person who was chased away from breaking into a vehicle to return to the scene."

Plaintiff could not find the appropriate testimony in Defendants' Exhibit C to

support this allegation of material fact. (*See* Defendants' Statement of Facts No.

21).

*Reply: Plaintiff's response does not contradict the fact asserted in paragraph 21.*

*The cited testimony states in pertinent part:*

        *THE WITNESS:   I still believe that Mr. Just had flourished him at the*

*time.*

        *Q:     (By Mr. Schottel)    And why do you believe that?*

        *A.     Doing the job over the certain years, a person who was chased off*

*when breaking into a vehicle wouldn't have came back to the scene so I—*

*(Def. Ex. C, 43:11-15)(Doc. 56-4.)*

*So, the fact asserted in paragraph 21 should be deemed admitted.*

22.     They placed Mr. Just in their squad car, and subsequently called Mr.

        Franklin to the scene again. (Ex. A, 41:7-10, 47:2-14).

Response:     Plaintiff admits the allegation of material fact in Paragraph 21 that,

"They placed Mr. Just in their squad car, and subsequently called Mr. Franklin

(the guy) to the scene again." (*See* Defendants' Statement of Facts No. 22).

23.     After he returned, the Officers handcuffed Mr. Franklin as well. (Ex. A, 47:2-21).

Response:    Plaintiff admits the allegation of material fact in Paragraph 23 that, "After he returned, the Officers handcuffed Mr. Franklin as well." (*See* Defendants' Statement of Facts No. 23).

24.     Officer Henry conducted a pat down search on Mr. Just, and looked around the vehicle for a knife but did not find one. (Ex. C, 25:11-12, 37:1-6).

Response:    Plaintiff admits the allegation of material fact in Paragraph 24 that, "Officer Henry conducted a pat down search on Mr. Just, and looked around the vehicle for a knife but did not find one." (*See* Defendants' Statement of Facts No. 24).

25.     Officer Henry did not search the inside of Mr. Just's truck for a knife. (Ex. C, 25:11-26:11).

Response:    Plaintiff admits the allegation of material fact in Paragraph 25 that, "Officer Henry did not search the inside of Mr. Just's truck for a knife." (*See* Defendants' Statement of Facts No. 25).

26.     After both individuals were in handcuffs, another officer arrived with an arrest van. (Ex. A, 48:3-9).

Response:    Plaintiff denies the allegation of material fact in Paragraph 26 that, "After both individuals were in handcuffs, another officer arrived with an arrest van." Defendants cite to Ex. C, 48:3-9, which sets forth:

"Q. Okay. Okay, so, they put the person who got into your truck in handcuffs while you were still in the cruiser?

A. Yep.

Q. Okay. And then they move you to the wagon once the wagon shows up?

A. Yes, sir."

The cited material does not support the alleged fact as

stated. (*See* Defendants' Statement of Facts No. 26).

*Reply: The cited material supports the asserted fact that the arrest van arrived once Mr. Just was in handcuffs. So the fact asserted in paragraph 26 is not materially disputed, and it should be deemed admitted.*

27.     A sergeant then arrived at the scene. (Ex. A, 48:10-49:15).

Response:     Plaintiff admits the allegation of material fact in Paragraph 25 that, "A sergeant then arrived at the scene." (*See* Defendants' Statement of Facts No. 27).

28.     After some discussion between the officers and the sergeant, Mr. Just was
        released. (Ex. A. 49:4-18).

Response:     Plaintiff denies the allegation of material fact in Paragraph 28 that, "After some discussion between the officers and the sergeant, Mr. Just was released."

This does not support Plaintiff's testimony. Plaintiff testified as follows:

"The sergeant had the paddy wagon guy open up the back door and he said there was a mistake and that he was sorry; it was just a misunderstanding. And I got

A - 016

out, they took the cuffs off me, and Officer Kuykendall, I think she said something, I think it was I'm sorry or not-- it was a misunderstanding or something like that." (*See* Defs. Ex A, TR. 49:10-15) (*See* Defendants' Statement of Facts No. 28).

*Reply:Defendants will amend paragraph 28 to state that after the sergeant arrived, Mr. Just was released.*

29.     Mr. Franklin did not want press any charges against Mr. Just, so no charges were subsequently filed against Mr. Just. (Ex. A, 49:4-8, 52:5-14; Ex. B, 44:14- 45:10; Ex. C, 35:21-36:1).

**Response:**     Plaintiff denies the allegation of material fact in Paragraph 29 that, "Mr. Franklin did not want press any charges against Mr. Just, so no charges were subsequently filed against Mr. Just." This contradicts the facts that Plaintiff was searched for a weapon, a knife, by the officers and no weapon was found. This also contradicts the source of the allegation and the credibility of the guy who made an allegation who was caught inside of Plaintiff's vehicle, even though it turned out to be the wrong vehicle. (*See* Defs. Ex. C, TR. 22:11-12; 25:1-11) (*See* Defendants' Statement of Facts No. 29).

*Reply:*     *Plaintiff's response does not dispute the fact asserted in paragraph 29, that Mr. Franklin did not want to press charges, so he was released. So this fact should be deemed admitted.*

30.     Officer Henry gave Mr. Just one of his business cards that night. (Ex. 3, 27:20-28:7; Exhibit 4, Copy of the business card given to Mr. Just.)

**Response:**     Officer Henry gave Mr. Just one of his business cards that night.

17

(*See* Defendants' Statement of Facts No. 30). Plaintiff reasserts his response to Paragraph 16 to this Paragraph 30 as it is the same.

*Reply:*        *Plaintiff's response does not dispute the asserted fact that Officer Henry did give Mr. Just one of his business cards. So paragraph 30 should be deemed admitted.*

II.    Plaintiff's Additonal Statements of Fact

31.    According to Defendant Nellie Kuykendall, Plaintiff was not placed under arrest on July 7, 2017 during the incident subject to this case. (Established by the Record – *See* Deposition of Defendant Nellie Kuykendall – Exhibit 1 [hereinafter "Defendant Kuykendall depo.– Ex. 1"], TR. 31:9-32:21).

*Reply:For the purpose of Summary Judgment only, this fact is uncontroverted.*

32.    Defendant Henry stated that Plaintiff was placed under arrest after the guy alleged that Plaintiff flourished a knife at the guy. (Established by the Record – *See*   Deposition of Defendant Eric Henry – Exhibit 2 [hereinafter "Defendant Henry depo. – Ex. 2"], TR.  27:1-15).

*Reply:For the purpose of Summary Judgment only, this fact is uncontroverted.*

33.    After receiving the same information that the guy alleged that Plaintiff flourished a knife at the guy, Defendant Kuykendall stated that Plaintiff was not under arrest, Plaintiff was handcuffed, but not under arrest and only detained for questioning. (Defendant Kuykendall depo. Ex. 1, TR. 31:24-32:17).

*Reply:For the purpose of Summary Judgment only, this fact is uncontroverted*

34.   According to Defendant Kuykendall, "Mr Just was never in our custody." (Established by the Record *See* Defendant Nellie Kuykendall's First Amended Answers to Plaintiff's First Set of Interrogatories Exhibit 3 [hereinafter "Defendant Kuykendall Amended Answers to Interrogatories Ex. 3"], No. 16(d)).

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted*

35.   No charges were initiated against Plaintiff. (Established by the Record *See* Defendant Kuykendall Amended Answers to Interrogatories Ex. 3, No. 16(g) and Defendant Eric Henry's First Amended Answers to Plaintiff's First Set of Interrogatories – Exhibit 4 [hereinafter "Defendant Henry Amended Answers to Interrogatories – Ex. 4"], No. 16(g)).

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted*

36.   When Plaintiff encountered the guy in his truck, a verbal confrontation ensued with no yelling and nothing physical. (Established by the Record – *See* Deposition of Plaintiff Jeffery Just – Exhibit 5 [hereinafter "Plaintiff depo. – Ex. 5"], TR. 15:7-16:20; 19:6-8).

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted*

37.   At the scene of the incident, Plaintiff didn't want to deal with the guy who broke in his truck and remained in his truck after he called the police. (Established by the Record – *See* Plaintiff depo. – Ex. 5, TR. 18:7-11).

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted*

38.   Plaintiff did not present any weapons to the guy that broke in his truck.

(Established by the Record – *See* Plaintiff depo. – Ex. 5, TR. 19:18-19).

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted*

39.   Plaintiff was not carrying any weapons. (Established by the Record – *See* Plaintiff depo. – Ex. 5, TR. 19:20-21).

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted*

40.   After Plaintiff called the police and before the police arrived, while Plaintiff was sitting in his truck, he observed the guy who broke in his truck in a vehicle driving away from the scene. (Established by the Record – *See* Plaintiff depo. Ex. 5, TR. 21:12-23:2).

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted*

41.   The guy that broke into Plaintiff's truck admitted to damaging the truck. (Established by the Record – *See* Plaintiff depo. – Ex. 5, TR. 41:22-42:18).

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted*

42.   On September 18, 2017, Plaintiff's undersigned counsel sent a request for records under the Missouri Sunshine Law, Chapter 610, Revised Statutes of Missouri, to the St. Louis city Police Department seeking all records relating to Plaintiff and the incident subject to this case. (Established by the Record – *See* Plaintiff's Missouri Sunshine Law Request – Exhibit 6 [hereinafter "Sunshine Law Request – Ex. 6"]).

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted, although this fact is immaterial because the City is not a defendant, nor is there a claim for a sunshine law violation.*

43.     Plaintiff's counsel received a 2-page incident report that completely omits
        Defendant Kuykendall's name as an assisting officer and makes no
        reference of a weapons offense arrest of Plaintiff; in fact, Plaintiff is listed as
        the victim of a crime committed by the guy who damaged Plaintiff's truck.
        (Established by the Record – *See* Incident Report – Exhibit 7 [hereinafter
        "Incident Report – Ex. 7"]).

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted,*
*although this fact is immaterial because the City is not a defendant, nor is there a*
*claim for a sunshine law violation.*

44.     Defendant Henry didn't ask Plaintiff if Plaintiff had a knife. (Established by
        the Record – *See* Defendant Henry depo. – Ex. 2, TR. 24:22-23).

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted*

45.     Defendant Henry did a pat down of Plaintiff and did not find a knife on
        Plaintiff. (Established by the Record – *See* Defendant Henry depo. – Ex. 2,
        TR. 25:11-26:1).

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted*

46.     Defendant Henry didn't search Plaintiff's truck for a knife. (Established by
        the Record – *See* Defendant Henry depo. – Ex. 2, TR. 26:5-7).

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted*

47.     Defendant Henry didn't search anywhere else for a knife. (Established by
        the Record – *See* Defendant Henry depo. – Ex. 2, TR. 26:2-4).

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted*

48.  Plaintiff did not threaten the guy in his truck with a knife. (Established by the Record – *See* Plaintiff depo. – Ex. 5, TR. 36:2-6).

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted*

49.  Defendant Henry and Defendant Kuykendall told Plaintiff that he was under arrest for assault. (Established by the Record – *See* Plaintiff depo. – Ex. 5, TR. 45:21-46:3)

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted.*

**Plaintiff's Writing Defendant Kuykendall's Name on the Back of Defendant Henry's Business Card**

50.  Plaintiff asked Defendant Henry and Defendant Kuykendall for a report and they told Plaintiff that they couldn't make a report but they can give him a business card. (Established by the Record – *See* Plaintiff depo. – Ex. 5, TR. 38:19-39:2).

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted.*

51.  Defendant Henry gave Plaintiff a business card but it only had defendant Henry's name on the business card. (Established by the Record – *See* Plaintiff depo. – Ex. 5, TR. 39:11-17 and Defendant Henry Business Card – Exhibit 8 [hereinafter "Business Card – Ex. 8"]).

*Reply: For the purpose of Summary Judgment only, this fact is uncontroverted*

52.  Plaintiff noticed that the Business Card did not have Defendant Kuykendall's name on it. (Established by the Record – *See* Plaintiff depo. – Ex. 5, TR. 39:14-23 and Business Card – Ex. 8).

*Reply:For the purpose of Summary Judgment only, this fact is uncontroverted*

53. Plaintiff took a pen and was writing Defendant Kuykendall's name on the back of the Business Card when Defendant Kuykendall grabbed Plaintiff's wrist and told plaintiff he was under arrest. (Established by the Record – *See* Plaintiff depo. – Ex. 5, TR. 40:3-10).

*Reply:For the purpose of Summary Judgment only, this fact is uncontroverted*

54. Plaintiff then put his hands behind his back and he was placed in handcuffs. (Established by the Record – *See* Plaintiff depo. – Ex. 5, TR. 40:23-41:10).

*Reply:For the purpose of Summary Judgment only, this fact is uncontroverted*

55. Plaintiff was then placed in the back of Defendant Henry and Defendant Kuykendall's patrol car. (Established by the Record – *See* Plaintiff depo. – Ex. 5, TR. 41:7-10).

*Reply:For the purpose of Summary Judgment only, this fact is uncontroverted*

56. A Paddy Wagon later arrived and Plaintiff was placed in the back of it. (Established by the Record – *See* Plaintiff depo. – Ex. 5, TR. 44:19-45:1).

*Reply:Defendants only object to the use of the term "paddy wagon." But, for the purpose of Summary Judgment only Defendants do not controver the fact that an arrest van arrived and that Mr. Just was placed in the back.*

57. Defendant Henry and Defendant Kuykendall told Plaintiff that he was under arrest for assault. (Established by the Record – *See* Plaintiff depo. – Ex. 5, TR. 45:21-46:3).

*Reply:For the purpose of Summary Judgment only, this fact is uncontroverted*

A - 023

58.     A sergeant had arrived, Plaintiff was let out of the Paddy Wagon and the sergeant said there was a mistake and that he was sorry; it was just a misunderstanding and the handcuffs were removed from Plaintiff. (Established by the Record – *See* Plaintiff depo. – Ex. 5, TR. 49:9- 22).

*Reply:Defendants only object to the use of the term "paddy wagon. But, for the purpose of Summary Judgment only, this fact is uncontroverted*

59.     In 2014, Defendant Kuykendall was given a written reprimand for failing to conduct a proper investigation. (Established by the Record – *See* Defendant Kuykendall Amended Answers to Interrogatories – Ex. 3, No. 11).*Reply:*

*For the purpose of Summary Judgment only, this fact is uncontroverted*

60.     On August 23, 2013, Defendant Kuykendall was given a written reprimand for failing to conduct a proper investigation. (Established by the Record – *See* Defendant Kuykendall Amended Answers to Interrogatories – Ex. 3, No. 14).

*Reply: This fact is controverted in that the reprimand that was listed in responses to Interrogatories 11 and 14 was for the same event (Pl. Ex. 1, 62:3-63:1).*

Respectfully submitted,

JULIAN L. BUSH
CITY COUNSELOR

*/s/ Brandon Laird*
Brandon Laird
Mo. Bar No. 65564
Assistant City Counselor
Attorney for Defendants
City Hall, Room 314,
St. Louis, MO  63103
314.622.4652
FAX: 314.622.4956
lairdb@stlouis-mo.gov

### Certificate of Service

The undersigned hereby certifies that on Friday, August 02, 2019 a true copy of the

foregoing was filed with the Clerk of the Court using the CM/ECF system which will

send notification of such filing to all attorneys of record.

*/s/ Brandon Laird*
Brandon Laird
Assistant City Counselor

A - 025

A - 026

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

JEFFERY JUST,                                    )
                                                 )
                 Plaintiff,                      )
                                                 )
        v.                                       )        Case No. 4:18-CV-424 NAB
                                                 )
CITY OF ST. LOUIS, et al.,                       )
                                                 )
                 Defendants.                     )

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' Motion for Summary Judgment under Fed.

R. Civ. P. 56.  [Doc. 55.]  The parties have consented to the jurisdiction of the undersigned

United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons set forth below,

the Court will deny Defendants' Motion for Summary Judgment.

**I.      Standard of Review**

This case is a false arrest and retaliation action filed by Jeffery Just asserting liability

under 42 U.S.C. § 1983 against Defendants Nellie Kuykendall and Eric Henry (hereinafter,

collectively "Defendants"), police officers employed by the City of St. Louis, Missouri, in their

individual capacity for actions taken under the color of state law.  The City of St. Louis was

previously dismissed from this case along with Plaintiff's Count III, which alleged liability for

the City of St. Louis under a theory of *respondeat superior*.  [Docs. 25, 26.]  Defendants filed a

joint motion for summary judgment asserting that they are entitled to qualified immunity on both

counts of Just's Complaint.

A party may move for summary judgment, identifying each claim or defense on which

summary judgment is sought.  Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment if

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civil P. 56(a). Federal courts must adhere to the axiom that "in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "A dispute is not 'genuine' unless the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party." *Herring v. Can. Life Assur. Co.*, 207 F.3d 1026, 1028 (8th Cir. 2000) (quoting *Anderson*, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). At the summary judgment stage, the Court is not to weigh the evidence and decide the truth of the matter, but rather only determine if there is a genuine issue for trial. *See Tolan*, 572 U.S. at 656 (citing *Anderson*, 477 U.S. at 249).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 231. "A state official will be shielded by qualified immunity if (1) the plaintiff fails to allege or show that the official's conduct violated a constitutional right or (2) the constitutional right was not 'clearly established' at the time of the

official's alleged misconduct." *Duffie v. City of Lincoln*, 834 F.3d 877, 882 (8th Cir. 2016).  It is

within the Court's discretion to select which inquiry to address first.  *Pearson*, 555 U.S. at 236.

"When summary judgment is sought on a qualified immunity defense, the court inquires whether

the party opposing the motion has raised any triable issue barring summary adjudication." *Ortiz*

*v. Jordan*, 562 U.S. 180, 184 (2011).  The Court evaluates the defense of qualified immunity

from the perspective of a reasonable officer based on facts available to the officer at the time of

the alleged constitutional violations.  *Ransom v. Grisafe*, 790 F.3d 804, 811 (8th Cir. 2015).

"Qualified immunity protects all but the plainly incompetent or those who knowingly violate the

law." *Bernini v. City of St. Paul*, 665 F.3d 997, 1005 (8th Cir. 2012) (citing *Ashcroft v. al-Kidd*,

563 U.S. 731, 743 (2011)).  "At the summary judgment stage, granting qualified immunity is not

appropriate where … a dispute remains regarding facts material to the qualified immunity issue."

*Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1212 (8th Cir. 2013).

## II.    Factual Background

The Court finds that the following facts, viewed in the light most favorable to Plaintiff,

are material and undisputed for purposes of Defendants' Motion for Summary Judgment.[1]  On

July 7, 2017, Just's truck ran out of gas near a MotoMart at the intersection of Dunn Road and

Riverview Drive.  Just locked his truck and then tried the door handle to ensure the truck was

locked because he had a large bag of tools in his truck.  Just then proceeded into the MotoMart to

purchase a gas can.

---

[1] The facts listed are undisputed by the parties or supported by appropriate citations to the record as required by Local Rule 4.01(E).  The Court has not included conclusory factual or legal statements or opinions in this fact section.  *See Quinn v. St. Louis County*, 653 F.3d 745, 751-52 (8th Cir. 2011) (plaintiff needed to explain the legal significance of her factual allegations beyond mere conclusory statements importing the appropriate terms of art).

Upon exiting the MotoMart, Just saw the driver side door of his truck open and saw a man[2] (hereinafter referred to as "John Doe") inside his truck going through the center console. Just confronted John Doe and told him to exit Just's truck.  Doe did not, claiming first it was his truck and then that it was his brother's truck. Doe continued to rifle through the center console. After several verbal exchanges, with no yelling and nothing physical, Doe exited Just's truck and Just was able to retrieve his cell phone from the vehicle and call the police.  Just subsequently saw Doe walk towards the MotoMart and out of sight.  Doe thereafter left the area as a passenger in a vehicle driven by a woman, who stopped her vehicle next to Just's truck, rolled down her window, and shouted something at Just.  Just, who "did not want anything to do with [Doe]," remained in his truck until Officers Henry and Kuykendall, the Defendants, arrived at the MotoMart, approximately 30-45 minutes later.  At no time did Just threaten Doe with a knife.

Upon seeing the Defendants pull into the MotoMart, Just walked to the MotoMart, spoke with the Defendants, returned to his truck, drove his truck to the MotoMart, and parked next to the Defendants' vehicle.  Just then proceeded to tell the Defendants what happened.

At some point a third person (hereinafter "John Roe"), who knows Doe in some capacity, drove up to the MotoMart and spoke with the Defendants.  Roe alleged to the Defendants that Just threatened and chased Doe with a knife.  (Kuykendall Dep. 23:5-24:16).  The Defendants then asked Roe to call Doe back to the scene.

Doe returned to the scene and engaged in a conversation with the Defendants and Just, near the rear of Just's truck.  Just stood on the driver's side of the truck, and the Defendants and Doe stood on the passenger's side of the truck.  During this conversation, Doe alleged that Just

---

[2] The man who broke into Just's truck is referred to by Just using the term "guy."  Defendants refer to the "guy" by the name "Donnell Franklin" for "ease of reading."  Defendants do not know, as a fact, that the "guy's" name is "Donnell Franklin."  *See* Kuykendall Dep. 27:13-29:23.  The given name of the "guy" remains in dispute.  *See* Defs.' Statement ¶ 3.  This Court will not refer to the "guy" as "Donnell Franklin."  The Court will refer to the "guy" as "John Doe."

4

chased and threatened Doe with a knife.  There was a lot of back-and-forth in the conversation, which continued for an unknown amount of time, and Doe kept insisting that Just's truck was his brother's truck, but then ultimately admitted he realized Just's truck was not Doe's brother's truck when Doe had trouble opening the door and then Doe's key would not fit in the ignition. At some point during the conversation the Defendants called an impound lot which confirmed Doe's brother's truck was impounded.  At some point after that, the Defendants told Doe to go home.

Just questioned the Defendants' decision to let Doe leave, and Defendants told Just that they could not really arrest Doe because he had made a mistake.  Defendant Henry then examined the passenger-side lock.  Neither defendant examined the driver-side lock.  Just then started looking around his truck, and told the Defendants that his sunglasses were missing from the truck.  A few minutes later, Just asked the Defendants to write a report about the incident. They refused saying "we really can't make a report" and "there is nothing to report."  After Just kept insisting the Defendants do something, the Defendants told Just they will give him a business card.

Henry handed Just a business card.  Just then looked at the card and realized it did not have Kuykendall's name on it.  Just wanted Kuykendall's name in order to talk to someone about the fact that Just's property was damaged, Doe admitted to it, the Defendants allowed Doe to leave, and Defendants were not going to make a report.  Just then took out a pen, looked closely at Kuykendall's nameplate to ensure he spelled her name correctly, and proceeded to write down Kuykendall's name on the card.  Kuykendall leaned in, saw Just writing her name down, and then grabbed Just's wrist saying, "That's it. You're under arrest."  Just did not resist, placed his hands behind his back, and was handcuffed by the Defendants.  During these events, Just kept

asking why he was under arrest but they had let Doe leave.  The Defendants responded they would have to call Doe back to the scene and arrest him too.  Defendants then placed Just in the back of the Defendants' police cruiser and subsequently called Doe back to the scene.  Just was told he was arrested for assault.

While sitting in the cruiser, Just continued expressing his disbelief that the Defendants had let Doe go after he had admitted to damaging Just's truck.  Defendant Kuykendall then informed Just that Doe's father had offered to pay for the damage to Just's truck.  Kuykendall told Just she would have paid for the damage to Just's truck if Just "would have let it go."  Just attempted to accept Kuykendall's offer, but she said, "it was too late."

At some point after placing Just in handcuffs, Henry conducted a pat down search on Just and looked around Just's truck for a knife but did not find one.  Henry did not search inside Just's truck for a knife nor did he search anywhere else.  Henry did not ask Just if he had a knife.  Just was not carrying any weapons, nor did he present any weapons at any point in time.  After Doe returned to the scene, the Defendants placed Doe in handcuffs as well.  Sometime later, an arrest van arrived at the scene and the Defendants moved Just from the cruiser to the arrest van.  Sometime after that, a police sergeant arrived at the scene.  The Defendants and the sergeant engaged in a conversation, but Just was unable to hear what was said.

After conversing with the Defendants, the sergeant came to the van and told Just that there was a mistake, that he was sorry, and that it was just a misunderstanding.  Just then vacated the van and the handcuffs were removed.  Kuykendall told Just it was a misunderstanding.  Just thanked the sergeant and shook his hand.  The sergeant responded, "no problem."  Just then promptly left the scene and, ultimately, filed this suit.

No charges were ever initiated against Just.  A 2-page incident report, regarding Just's call to police, omitted Kuykendall's name as an assisting officer and made no reference of a weapons offense arrest of Just.  Rather, the report lists Just as the victim of the crime of stealing under $150.00.

The following facts are in dispute.  Just was either not arrested, arrested for assault, or arrested for flourishing a weapon on another person.  Assuming Just was arrested, the Defendants and Just disagree as to the timing of Just's arrest.  Just believed himself to be arrested upon being placed in handcuffs and told he was under arrest for assault.  Henry testified Just was placed under arrest when he was put in handcuffs for "use of a weapon, flourishing a person." Kuykendall testified that Just was only detained for further investigation, not under arrest, when she and Henry placed Just in handcuffs.  Kuykendall further testified that Just was never "placed in custody."  Kuykendall testified Just was detained for "UUW flourishing."  Just states that he was only arrested after expressing his disagreement with the officers' failure to arrest Doe and writing down Kuykendall's name on the business card.

## III.   Discussion

Based on the foregoing factual background, the Court will determine whether Defendants should be granted qualified immunity on Just's claims.

### A.  Count 1:  False Arrest under 42 U.S.C. § 1983 and the Fourth Amendment

To successfully assert qualified immunity on Just's false arrest claim, Defendants must show that Just fails to allege or show that their conduct violated a constitutional right or the constitutional right was not "clearly established" at the time of the official's alleged misconduct. The Fourth Amendment right to not be arrested without probable cause is clearly established. *Kuehl v. Burtis*, 173 F.3d 646, 649 (8th Cir. 1999) (citing *Habiger v. City of Fargo*, 80 F.3d 289,

A - 033

295 (8th Cir.), *cert. denied*, 519 U.S. 1011 (1996)).   To establish a violation of the Fourth Amendment in a § 1983 action, Just must demonstrate that a seizure occurred and the seizure was unreasonable.   *Howard*, 570 F.3d at 988; *Moore v. Indehar*, 514 F.3d 756, 759 (8th Cir. 2008).   For the purposes of the Fourth Amendment, a "seizure" occurs whenever "an officer restrains an individual's liberty through physical force or a show of authority."   *Id*. (quoting *Moore*, 514 F.3d at 759).   While there is a discrepancy upon the record as to whether Just was "arrested," it is clear that Just was "seized."

In the context of the Fourth Amendment, "a constitutional violation occurs when there is a warrantless arrest that is not supported by probable cause to believe that a crime has been committed."   *Ross v. City of Jackson*, 897 F.3d 916, 920 (8th Cir. 2018).   Law enforcement officers are entitled to qualified immunity, however, even if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable.   *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010); *Kuehl*, 173 F.3d at 649.   The issue for qualified immunity purposes, therefore, is the question of law of whether arguable probable cause existed at the time of the arrest.   *Id*.; *accord Hosea v. City of St. Paul*, 867 F.3d 949, 955 (8th Cir. 2017).

Similar to the doctrine of qualified immunity, the concept of probable cause is diverse and tests vary.   "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt."   *Baribeau*, 596 F.3d at 474 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).   A reasonable ground for belief means more than bare suspicion, but less than evidence which would justify condemnation or conviction.   *Id*.   "An officer has probable cause to arrest a suspect without a warrant if the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the

circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Arnott v. Mataya*, 995 F.2d 121, 124 (8th Cir. 1993) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "Probable cause for an arrest may exist where an unknown citizen makes complaints, as a victim or eyewitness to a crime, where the underlying circumstances demonstrate his first-hand personal knowledge." *McCreary v. Sigler*, 406 F.2d 1264, 1269 (8th Cir. 1969). Arguable probable cause "is a mistaken but objectively reasonable belief the suspect committed a criminal offense." *Dowell v. Lincoln Cnty.*, 762 F.3d 770, 777 (8th Cir. 2014). The "determination of whether arguable probable cause exists is informed by [the] assessment of what information the officer knew at the time that he made the probable cause determination, and what 'a reasonably thorough investigation' would have uncovered about the likelihood that a crime had been committed." *Ross*, 897 F.3d at 921 (quoting *Kuehl*, 173 F.3d at 650).

In the case at hand, Just was at least detained or "seized" under the Fourth Amendment after Defendants received an allegation from John Doe that Just had threatened and chased Doe with a knife. Assuming Just was arrested, he was arrested either for "assault" or unlawful use of a weapon, "UUW", *i.e.*, "flourishing a weapon." In order to determine whether probable cause for an arrest exists, the Court "first examines the state statute on which plaintiff's arrest was based." *Wilson v. Jefferson City*, 4:18-CV-1951 CAS, 2019 WL 4860665, at *17 (E.D. Mo., Oct. 2, 2019); *accord Ross*, 897 F.3d at 920; *Hoyland v. McMenomy*, 869 F.3d 644, 652-654 (8th Cir. 2017); *Baribeau*, 596 F.3d at 474-78. The Court is unable to do so, however, because not only are the facts in dispute as to whether Just was actually arrested and, assuming Just was arrested, the reason Just was arrested and the timing of the arrest, but the Defendants have not presented the statute upon which Just's arrest was based. Further, the Court notes that Defendant's version of events downplays the timing of Just's arrest, which is a material fact to

both of his claims.  Doe admitted he had broken into Just's truck and there was evidence of damage to the lock on his truck.  The Defendants allowed Doe to leave the scene.  The Defendants admit that they had a discussion with Just that no crime had been committed by Doe so Doe was allowed to leave.  The Defendants did not find a weapon on Just and did not arrest him at the time the allegation was made by Doe.  The Defendants did not arrest Just until after he disputed the Defendants' reasons for failing to arrest Doe and write a police report, and after he wrote down Kuykendall's name on the back of Henry's business card.  There is no evidence that the Defendants had any intention of arresting either Doe or Just, until after Just complained about how Defendants handled the incident.

If the Court accepted that Just was arrested for assault in order to determine whether arguable probable cause for the arrest existed, this Court has no facts as to *which* assault statute the arrest was based.  Missouri's assault statutes range from a class C misdemeanor to a class A felony, each with different factors.  The determination whether an officer has made an "objectively reasonable" mistake as to arguable probable cause is difficult, if not impossible, when the arresting officers cannot agree whether Just was arrested, the reason for the arrest, the timing, nor provide the state statute upon which Just's assumed arrest was based.  It is the moving party's burden, to show that no genuine issue of material fact exists and that the Defendants are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court "must view the evidence in the light most favorable to the opposing party" and draw all "reasonable inferences" in favor of the opposing party.  *Tolan*, 572 U.S. at 656.  The Defendants have not met their burden.  There are genuine issues of material fact which are critical to this case.  These issues of material fact include, but are not limited to, whether Just was arrested and if so, what he was arrested for, and if there is any factual support for probable cause regarding the arrest.

These material facts remain in genuine dispute and go to the very essence of this case. "[D]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Summary judgment is not appropriate as to Count 1. *Arnott*, 995 F.2d at 124 ("[W]here the facts are disputed or where they are subject to different inferences, the question of probable cause is for the jury and summary judgment is inappropriate.").

### B.  Count 2: Retaliation under 42 U.S.C. § 1983 and the First Amendment

Next, the Court will evaluate Just's retaliatory arrest claim.  Just asserts that the police officers arrested him after he complained about their failure to arrest Doe and wrote down Officer Kuykendall's name on the business card he received from Officer Henry.  Defendants ask the Court to assume that Just was arrested and state that Just was arrested for his actions of chasing Doe with a knife.

To prove a constitutional violation, Just must show that he was arrested in retaliation for protected speech. *Thurairajah v. City of Fort Smith, Arkansas*, 925 F.3d 979, 984 (8th Cir. 2019).  A retaliatory arrest claim requires a four part showing that (1) Just engaged in a protected activity, (2) the officers took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, (3) the adverse action was motivated in part by Just's exercise of the protected activity, and (4) lack of probable cause or arguable probable cause. *Thurairajah*, 925 F.3d. at 984-85.  Probable cause generally defeats a retaliatory arrest claim unless a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been. *Nieves v. Bartlett*, 139 S.Ct. 1715, 1727 (2019).

Assuming the facts in the light most favorable to Just, Defendants have failed to meet their burden to establish that they are entitled to judgment as a matter of law on the retaliatory arrest claim, because they cannot show that they had probable cause or arguable probable cause to arrest Just.  The timing of Just's arrest after complaining about Defendants' failure to arrest Doe, failure to provide a police report, and writing down Kuykendall's name indicates that his speech could have been the motivating factor of his arrest.  As stated previously, there are genuine issues of material fact surrounding this arrest that cannot be resolved without the Court engaging in credibility assessments and making assumptions that cannot be inferred from the evidence before the Court.  It is the province of the jury to assess the credibility of the evidence, and if the jury accepts Just's version of events, it could fairly conclude that Defendants violated his First Amendment rights.  *Brown v. City of Golden Valley*, 574 F.3d 491, 500 (8th Cir. 2009).  Therefore, the Court will deny summary judgment to the Defendants on Just's retaliatory arrest claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **DENIED**.  [Doc. 55.]

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of December, 2019.

12

A - 038